ISRAEL CAMPFIELD, Executor of Mary Campfield, deceased v. CALEB H. ELY and JAMES ELY.

An action is sustainable under our statute, *Rev. Laws,* 766, *sec.* 2, against an executor in his representative capacity and the judgment may be *de bonis testatoris.*

Where articles were procured from the store of the plaintiffs, after the death of the testatrix, on the same day, by persons living in the family, and entered in the pass book, which the testatrix had been accustomed to use at the store, and which articles were actually used at the funeral, and were suitable to the condition in life of the testatrix, this evidence is sufficient to justify a charge against the executor, or at least to raise such questions upon the merits, as ought to be closed by the decision of the Common Pleas on appeal.

The demand of a creditor against the estate of a testatrix, is not barred merely by the adoption of a rule by the Orphans Court, directing creditors to exhibit their claims within a limited time. Farther acts are to be done according to the statute. *Rev. Laws,* 412, *sec.* 14, before the creditor becomes barred of his action.

Though the court below ought, in strictness, to have nonsuited the plaintiff, yet if in the progress of the trial, evidence sufficient to sustain the action is introduced, this court will not reverse the judgment for the refusal to order the nonsuit.

This was an action brought in the court for the trial of small

Campfield *v.* Ely.

causes by Caleb H. Ely, and James Ely, to recover the amount of certain articles of mourning apparel procured at their store, on the day the testatrix died, but after her death, by two females who lived in her family. It appeared in evidence on the trial, that the articles were actually used at the funeral and were suitable to the condition in life of the testatrix. No express authority or direction to procure the articles was given by the executor, and the suit was not brought, till after he had settled with the Orphans Court.

The points taken and insisted upon for a reversal of the judgment below, appear in the opinion of this court, delivered by the Chief Justice.

*Schofield* for plaintiff in certiorari

*W. Miller* for defendants.

EWING, C. J. The plaintiff in certiorari was sued in the court for the trial of small causes for the amount of a small account for funeral expenses. Judgment was rendered against him in that court and also in the Court of Common Pleas upon appeal. The latter judgment he now seeks to reverse.

The first reason he assigns is that an action for funeral expenses can be maintained against an executor in his individual character only, and not in his representative capacity. And in support of this position he cites *Myer* v. *Cole*, 12 *John.* 349, and *Demott* v. *Field*, 7 *Cowen*, 58.

Whatever may be the doctrine in this respect, of the courts of New York or of England, it appears to me that an action for funeral expenses is sustainable under our statute against an executor in his representative capacity, and that the judgment may be *de bonis testatoris*. By that statute, *Rev. Laws* 766, *sec.* 2, funeral expenses are placed among the debts of preference and to be first paid out of the estate. They are enumerated along with the physician's bill, and judgments entered of record against the decedent in his life time; and it is provided that an action for them may be brought against an executor, even within the six months, which is in general allowed him to examine into the condition of the estate.

The second reason is, that there was no authority from the executor to purchase the goods, and although used for the pur-

pose of the funeral, the executor is not chargeable by virtue of any implied authority arising from his relation to the estate.

It appears from the state of the case, that the articles were procured from the store of. the plaintiffs below, after the death of the testatrix, on the same day, by two females, one of them her daughter, and both living in the family, and were entered in the pass book which the testatrix had been accustomed to use, at the store, and which the females brought with them. It was proved that the articles were actually used at the funeral and were suitable to the condition in life of the testatrix. And this evidence was, I think, quite sufficient to justify a charge against the executor, or at least to raise such questions upon the merits, as, according to our practice, ought to be closed by the decision of the Court of Common pleas.

3. The third reason is that the demand was barred, because not shewn to have been presented to the executor within the time limited by a rule of the Orphans Court.

The only evidence exhibited by the executor, of a bar arising from such limitation, so far as appears from the state of the case and the accompanying documents, was a copy of the first rule usually granted in such cases, which prescribes a time and directs notice thereof, by advertisements to be given. Now it is clear that the adoption of such a rule by the court, which is all the evidence proves, can of itself create no such limitation or bar. Farther acts are to be done, according to the statute, *Rev. Laws* 412, *sec.* 14, before the creditor becomes barred of his action.

4th Reason. On the appeal, when the plaintiffs had rested their evidence, the executor moved for a nonsuit because they had made no proof of assets. The court erred, the executor says, in overruling this motion. Afterwards the executor went into his defence, in the course of which he produced a certified copy of his account as settled in the Orphans Court, whereby there appeared an unexpended balance in his hands.

If then it be admitted that in strictness, the plaintiffs were bound, in consequence of the above mentioned plea, to have given some evidence of assets, and that without it, the court might properly have ordered a nonsuit, yet inasmuch as sufficient proof on this head afterwards appeared in the progress of

the trial by the settled account, which was at least prima facie evidence of assets, it would not be right now to reverse the judgment for the refusal of the court to order the nonsuit. In *Ayres* v. *Van Lieu,* 2 *South.* 771, one of the judges said it was not proper to reverse a judgment on a writ of error "where the court erred on the first bill of exceptions, if it appeared by the second, that there were facts which, if before them, would have justified their first opinion."

Judgment affirmed.

CITED in *Steelman* v. *Steelman,* 1 *Harr.* 68 ; *Rodenbury* v. *Rosebury,* 4 *Zab.* 493.