JAMES P. SULLIVAN, appellant,

*v.*

RICHARD W. HORNER, administrator &c., respondent.

1. The funeral expenses of a decedent are preferred to the demands of his judgment creditors, when the assets are insufficient to satisfy all the preferred claims, and this notwithstanding the present statute (*Rev. p. 764 § 58*) mentions judgments of record first in stating what claims are to be preferred.

2. In an insolvent estate, and in preference to a judgment against the intestate, the amount of $650 was allowed for the funeral expenses of the intestate and his wife and child, all of whom were killed simultaneously, in a railroad accident in Texas, where they were living temporarily, which amount included the cost of transporting the bodies hither, where the intestate resided, and their burial, the disbursements being suited to their condition in life; it being held that the preference given by the statute to the funeral expenses of a decedent embraces, under the circumstances, the funeral expenses of the wife and child.

Appeal from decree of Monmouth orphans court.

*Mr. G. T. Werts,* for appellant.

*Mr. E. W. Arrowsmith,* for respondent.

THE ORDINARY.

The subject presented for adjudication is a claim of James S. Coleman against the estate for the funeral expenses of the intestate, Moses W. Stoll, and his wife and child. Stoll died on the 7th of February, 1882, at Waco, in Texas, whither he had gone from Matawan, in this state, to engage in the construction of a railroad there. His residence was in Matawan. His stay in Texas was to be merely temporary. He intended to return to Matawan. He and his wife and child were all killed at the same time, in a collision on a railroad. Coleman ordered and paid for the funeral. The bodies were brought from Texas to this state for burial in the same month of February, and were

buried in Stoll's burial plot, in a cemetery at or near Matawan. The cost of the funeral, including the amount ($10) of a sur-, geon's bill for services at Waco to render the head of the child presentable to view, and the cost ($235.25) of sodding and curb-ing the lot in the cemetery, and of a monument over the graves, was $1,767.95. In this amount were included the expenses ($100) of a person who came from Texas to this state with the bodies, to superintend the transportation thereof. The expense of the funeral was increased by the amount of about $500 by the bursting of the caskets in which the bodies were placed in Texas, which rendered it necessary to buy new ones on the arrival of the bodies here, and to transfer the bodies thereto. The agent of Mr. Coleman (it was Mr. Horner, who afterwards became administrator of Stoll) endeavored to keep down the expenses of the funeral as much as possible, and the funeral was in accordance with the station in life of the decedent. The estate is insolvent. The appellant, a judgment creditor of Stoll, excepted to the claim of Coleman, which, with interest to June 24th, 1884, amounted to $1,980. At the time of the funeral, Coleman did not know of the existence of the judgment. The orphans court allowed the claim to the amount of $760, which they adjudged to be a reasonable sum for the funeral expenses of the intestate. The appellant insists that the expenditures of Coleman were entirely voluntary, and that he cannot recover against the estate therefor, nor for any part thereof; that if he can recover, his claim is not to be preferred to that of the judg-ment creditor; that if it is to be so preferred, it can only be preferred for what would be the reasonable cost of the funeral of the intestate alone, in Texas, where he died. An executor is bound to provide for his testator decent and appropriate Christian burial. Not only do the usages and necessities of society require this at his hands, but it is a requirement of the law also. *Went. Exrs. 17 § 1; Ram on Assets, 331.* Decent Christian burial is part of the individual rights of every one. The estate in the hands of the executor or administrator is bound by law for the payment of the expenses of the decent interment of the decedent, and the executor or administrator, if he have

sufficient assets, is liable upon an implied promise to another person who, as an act of duty or necessity, has provided for the interment, if the funeral was conducted in a manner suitable to the rank in life of the decedent, and the charge is fair and reasonable. *Tugwell* v. *Heyman, 3 Campb. 298; Rogers* v. *Price, 3 Y. & J. 28; Rappelyea* v. *Russell, 1 Daly 217.* Funeral expenses are, by the common law, to be first paid out of the assets. *11 Vin. Abr. 432.* And they are by law, in England, preferred in payment to a debt due the crown. *2 Wms. Exrs. 988.* And in this country, to a debt due to the United States government. *United States* v. *Eggleston, 4 Sawy. 199.* By our statute, they are among the preferred claims. Though grouped in the statute with other claims also preferred, they are entitled to preference over those claims, as they are at the common law. The statute does not take away the absolute preference which the common law accorded. The reason for such absolute preference still exists in full force. Our statute as to preferred claims is as follows: judgments entered of record against the decedent in his lifetime, funeral charges and expenses, and the physician's bill during the last sickness, shall have preference, and be first paid out of the personal and real estate of the testator or intestate. *Rev. p. 764 § 58.* In the statute, as it stood before revision, they were mentioned in inverse order. *Rev. Stat. p. 346 § 2.* It is argued that the preferred claims, under the present statute, are entitled to priority in the order in which they are mentioned. This construction would give to judgments of record against the decedent in his lifetime preference over his funeral expenses and the physician's bill for services during the last sickness. It is entirely obvious that such a construction is not allowable. It might give to the judgment creditor of an insolvent decedent the entire property of the debtor, and leave his body to be buried at public expense, and his physician's bill, for services in his last illness, unpaid. It would subordinate the demands of society, in the very important matters of medical aid in sickness and decent burial after death, to the claim of a creditor, and thus the insolvent might be compelled to depend upon charity for medical aid in his last illness, and his body, at

his death, go to a pauper's grave, furnished at the public expense. The condition of a man's estate is, in the great majority of cases, unknown to the community until after his death. It follows that if the construction contended for were adopted, the physician and the undertaker would, in very many cases, decline to render their services on the credit of the estate. The law is not so careful of the interests of judgment creditors of insolvent debtors as to prefer their demands to the claims of humanity and the proprieties and necessities of society, but, on the contrary, for manifest reasons, subordinates the former to the latter. It has been held that the claim for funeral expenses is not to be regarded as a debt at all, but as a charge upon the estate. *Patterson* v. *Patterson, 59 N. Y. 574; Schouler on Exrs.* § *421.* And from an early day it has been held that a stranger who furnished a funeral for a decedent does not thereby make himself executor *de son tort.* The dictates of humanity, no less than the decencies of enlightened society, demand that the reasonable funeral expenses, and the physician's bill of the last sickness of a deceased debtor, be preferred in payment to all other claims or debts. The same considerations apply in this case to the reasonable funeral expenses of the wife and child of the decedent. He and they were deprived of life by the same fatal stroke, and were buried with one and the same funeral. Had he survived them, it would have been his duty to bury his wife and child, and the law would have required it at his hands. This duty, which he was thus unable to discharge, the law, under the circumstances, charges upon his estate. Otherwise, the law, while it secures to the deceased insolvent debtor decent burial out of his estate, would deny it to his wife or child dying at the same time, and would, merely out of consideration for his creditors, leave their bodies to be buried by the hand of charity, and perhaps at the public expense. That would be discreditable to the law. In such a case it should be held that, in the interest of society, out of a proper regard to its proprieties and decencies, and to protect the public against the expense, and put it where it of right should fall, the reasonable expense of the funeral of the wife or child may be included in that of the husband or

Sullivan v. Horner.

father. Nor would it be too great a strain upon the words of the statute, but it would be a reasonable construction, to hold that, under such circumstances, it embraces such expense. It is true the statute, in the provision for the payment of funeral expenses, contemplates the expenses of the funeral of the decedent debtor, but an enlightened construction would hold that the provision is broad enough to embrace, in an exceptional case, such as this, the reasonable funeral expenses of the wife and child in that of the husband and father. The case under adjudication differs essentially from that in which a husband or father furnishes the funeral, and dies without paying for it. In the latter case, the unpaid claim for funeral expenses would not be a charge upon his estate, but merely an unpreferred debt. (a) The charge of funeral expenses of the wife or child upon the husband's or father's estate, when 'he dies insolvent before he can discharge his duty of burying his dead, rests upon the ground of necessity and public decency. The expense of the funeral must, in such case, not only be reasonable, but should be only such as is necessary for a funeral conducted in a plain manner, and without the superfluous accessories which would be allowable in case the estate were solvent. The rule, as against a creditor, is that no more shall be allowed for a funeral than is necessary, and, in considering what is necessary, regard must be had to the degree and condition in life of the decedent. *Hancock* v. *Podmore, 1 B. & Ad. 260; Edwards* v. *Edwards, 2 Cr. & M. 612.* When the decedent dies away from home, it is reasonable that his body should be brought home for interment. And to the expense of such transportation may reasonably be added that of a person to accompany the body for the purpose of superintending such transportation. *Hasler* v. *Hasler, 1 Bradf. 248; Schouler on Exrs.* § *421.* In this case the expenditure for the funerals, not including $253.35 expended for a monument and work upon the burial plot, was $1,514.70. The court allowed only $760, including interest, i. e., $650 for the expenditures. That is about $216 for each person. The rule on the

(a) Note.—*Lawal* v. *Kreider, 3 Rawle 300; Mease* v. *Wagner, 1 McCord 395.*— Rep.

subject of allowances for funeral expenses, already stated, is that they must be reasonable under all the circumstances. The amount allowed by the orphans court is reasonable under the circumstances of this case. It is true that in their decree the orphans court state that the $760 were allowed as a reasonable sum for the expenses of the funeral of the intestate. The court probably regarded the funeral as the funeral of the intestate in which his wife and child were buried with him.

The decree should be affirmed, but without costs.