938 So.2d 432 (2006)
Patrena Booth MCRAE
v.
David McCoy BOOTH.
2040969.
Court of Civil Appeals of Alabama.
March 3, 2006.
*433 J.E. Sawyer, Jr., Enterprise, for appellant.
G. Scott Frazier, Tuscaloosa, for appellee.
PITTMAN, Judge.
This appeal concerns the ultimate disposition of the body of Clarine Booth, who died on June 24, 2005 (hereinafter referred to as "the mother" or "the decedent").
The record reveals that during the final years of the mother's life, her two children, Patrena Booth McRae ("the daughter") and David McCoy Booth ("the son") engaged in protracted litigation regarding the mother's financial affairs; the son and the daughter also opposed each other in proceedings involving the administration of the estate of their father. At the time of her death, the mother was 81 years old and resided in a nursing home.
On July 1, 2005, the son filed a petition in the Tuscaloosa Circuit Court seeking the issuance of a judgment allowing him to direct a particular funeral home to prepare the decedent's body for burial and to inter it. In that petition, the son alleged that the daughter had objected to interment in advance of an autopsy to determine the cause of the decedent's death and that the decedent's body had been placed in "cold storage" at the funeral home. Counsel for the son and counsel for the daughter then appeared at a hearing in the circuit court on July 6, 2005, at which time the daughter denied that the son was entitled to the requested relief and averred that the circuit court was without jurisdiction to decide the controversy. After that hearing, counsel for the son submitted a letter brief and copies of certain legal authorities. On July 15, 2005, the circuit court entered a judgment in which it declared that §§ 34-13-11 and 34-13-12, Ala.Code 1975, gave the circuit court the power to "`break the impasse'" arising by virtue of the disagreement between the daughter and the son concerning the disposition of the decedent's body. The circuit court opined that because none of four specified Alabama statutes (Ala.Code 1975, §§ 15-14-2, 25-5-77, 27-19-3, and 27-20-5) authorized an autopsy under the circumstances of the case, the daughter was not entitled to defer the burial of the decedent's body. The circuit court subsequently denied the daughter's postjudgment motion filed pursuant to Rule 59, Ala. R. Civ. P., and amended its judgment in only minor respects, but that court, after hearing evidence from a funeral-home employee, set a supersedeas bond amount and allowed the daughter to supersede the judgment pending appeal by posting a bond in the amount of $12,500. The daughter's appeal from the July 15, 2005, judgment was transferred to this court by the Alabama Supreme Court pursuant to § 12-2-7(6), Ala.Code 1975.
The Alabama Supreme Court, in Cottingham v. McKee, 821 So.2d 169 (Ala. 2001), noted that "Alabama courts have not addressed the question of who has the right of possession of a dead body for the purpose of preservation and burial" and that "Alabama does not have a statute addressing the custody of the remains of deceased persons." 821 So.2d at 171. Instead, Alabama appears to follow the principle, which is generally accepted in other jurisdictions within the United States, that "the right to possession of a body for the purpose of burial belongs to the surviving spouse" or, in the absence of such a spouse, "the next of kin." Id.; see also Southern Life & Health Ins. Co. v. Morgan, *434 21 Ala.App. 5, 10, 105 So. 161, 166 (opinion on rehearing holding that the "quasi-property" right of possession of a dead body for burial is a legal and judicially protectible right that devolves to the decedent's next of kin in the absence of a spouse), cert. denied, 213 Ala. 413, 105 So. 168 (1925). Moreover, because at common law "burial of the dead is of ecclesiastical cognizance," Deavors v. Southern Express Co., 200 Ala. 372, 373, 76 So. 288, 289 (1917), the circuit court, having general equity jurisdiction in direct succession to English ecclesiastical courts (see § 12-11-31(1), Ala.Code 1975, and Northcom, Ltd. v. James, 694 So.2d 1329, 1341 (Hooper, C.J., concurring in the result)), was empowered to determine questions arising in this case concerning the right to possess and dispose of the decedent's body. See also Sherman v. Sherman, 330 N.J.Super. 638, 646, 750 A.2d 229, 233 (Ch.Div.1999), and Lavigne v. Wilkinson, 80 N.H. 221, 222, 116 A. 32, 32 (1921).
In many cases, only one person will constitute a decedent's "next of kin" whose rights regarding that decedent's dead body are judicially protectible. Here, however, the son and the daughter are both the decedent's "next of kin"  each is of equal kinship to the decedent  and thus the "impasse" referred to by the circuit court in its judgment has arisen.
Although the son cites §§ 34-13-11 and 34-13-12, Ala.Code 1975, as supporting the circuit court's judgment that he should have authority to direct the burial of the decedent's body over the daughter's objections, the pertinent question presented by the daughter's appeal is, in actuality, not controlled by those statutes. Section 34-13-12(a) deals with the liability of funeral directors or funeral establishments when express written authorization for final disposition or cremation of a dead body is received from "the authorizing agent," while § 34-13-11 simply lists persons and groups of persons, in order of priority, who are entitled to act as "authorizing agents" for purposes of § 34-13-12. While a contest between parties who were in differing degrees of kinship to a decedent during his or her lifetime might be decided by reference to such statutes (see Andrews v. McGowan, 739 So.2d 132, 135-36 (Fla.Dist. Ct.App.1999)), those statutes do not shed light upon which party is entitled to prevail in a contest over rights regarding a decedent's dead body among multiple potential "authorizing agents" in the same degree of kinship. The circuit court therefore erred in relying upon those statutes in permitting the son to direct that the decedent's body be interred.
However, the circuit court's conclusion regarding the source of its authority to "break the impasse" does not, in and of itself, warrant reversal of the judgment under review. As we have stated, the circuit court's authority to decide the controversy stems not from Ala.Code 1975, §§ 34-13-11 and 34-13-12, but from that court's equity powers. While no case from Alabama sets forth principles governing the exercise of those powers in this fact setting, authority from other states indicates that when disputes arise among a decedent's kin concerning the proper disposition of a decedent's corpse, a court should decide the matter based upon the inherent equity of the case appearing from all the attending facts and circumstances:
"`If a dispute arises about it among relatives, as in the present case, it must be determined by principles of equity and such considerations of propriety and justice as arise out of the particular circumstances of the case. No general rule to be applied absolutely in all cases can be laid down upon the subject, for what is fit and proper to be done in each case must depend upon the special circumstances *435 of that case. It is a jurisdiction which belongs to equity, and the chancellor will exercise it with great care, having regard to what is due to the natural feelings and sensibilities of individuals, as well as to what is required by considerations of public propriety and decency.'"
Wood v. E.R. Butterworth & Sons, 65 Wash. 344, 347-48, 118 P. 212, 214 (1911) (quoting Fox v. Gordon, 16 Phila. 185, 186-87 (Pa. County Ct. 1883)); accord Smiley v. Bartlett, 3 Ohio Cir. Dec. 432, 434, 6 Ohio C.C. 234, 238 (1892) (when next of kin disagree concerning burial place, a court should determine the proper course to pursue "in the exercise of its best judgment, and with due regard to the rights of all the parties").
Thus, the circuit court was empowered to determine whether the decedent's body should be interred immediately, as contended by the son, or whether the decedent's body should be interred only after an autopsy, as contended by the daughter. In choosing the former option, the circuit court entered a judgment that expedited the interment of the decedent's body in a manner consistent with public policy favoring prompt and decent burial of the dead. Haeberle v. Weber, 56 N.J.Super. 428, 431, 153 A.2d 390, 392 (Law Div.1959). As stated by a Texas intermediate appellate court:
"Public policy and due regard for the public health, as well as the universal sense of propriety, require that dead bodies of human beings be decently cared for and disposed of at the very earliest moment, consistent with the exigencies of the case and due regard for the prevailing custom of the country and the religious convictions of the deceased and his family[.] . . . [T]he universal sentiment of humanity against profanation[] . . . impels courts generally to discourage delay in the interment of dead bodies. The delay in the interment of dead bodies unnecessarily is repugnant to the sentiment of humanity and should not be permitted, except under circumstances indicating a necessity or for compelling reasons therefor."
Burnett v. Surratt, 67 S.W.2d 1041, 1041 (Tex.Civ.App.1934).
The son's desire to immediately inter the decedent's body is wholly consistent with the principle of speedy interment recognized in the foregoing authorities. Stated simply, as the circuit court recognized, a dead body "`must be laid away.'" Rollins v. Phillips, 554 So.2d 1006, 1009 (Ala. 1989) (quoting Louisville & N.R.R. v. Wilson, 123 Ga. 62, 63, 51 S.E. 24, 25 (1905)). The daughter, on the other hand, offered the circuit court no authority under which an autopsy could be statutorily compelled in this case. Under the circumstances, we cannot conclude that the circuit court erred in determining that the equities of the case favored a quick interment of the decedent's body rather than maintenance of the status quo  continued cold storage of the body at a funeral home at the expense of $95 per day  until such indeterminate time as the son might be persuaded to add his consent to a private autopsy to that of the daughter.[1]
Based upon the foregoing facts and authorities, we conclude that the circuit court's judgment is due to be affirmed.
AFFIRMED.
*436 CRAWLEY, P.J., concurs.
THOMPSON, J., concurs in the result, without writing.
MURDOCK, J., concurs in the result, with writing, which BRYAN, J., joins.
MURDOCK, Judge, concurring in the result.
Sections 34-13-11 and -12, Ala.Code 1975, were intended to insulate funeral directors and funeral establishments from liability for their actions in connection with the disposition of human remains. I therefore am not persuaded that, as stated in the main opinion, a "contest between [surviving relatives of the decedent] who were in differing degrees of kinship to the decedent during his or her lifetime," as opposed to a contest between a surviving relative and a funeral director, "might be decided by reference to such statutes." 938 So.2d at 434. Nor do I consider the Florida case of Andrews v. McGowan, 739 So.2d 132 (Fla.Dist.Ct.App.1999), persuasive authority for that notion.
Nonetheless, the main opinion does conclude that the aforementioned statutes do not shed light upon which party is entitled to prevail in a contest over the disposition of a relative's human remains among more than one surviving relative of the same degree of kinship. Accordingly, the main opinion concludes, and I agree, that the circuit court erred in relying upon those statutes in deciding the dispute between the son and the daughter in this case.
The main opinion, however, goes on to justify an affirmance of the circuit court's judgment based upon "the inherent equity of the case" and a "public policy" consideration identified by the main opinion, namely, the need for the prompt burial of the dead. 938 So.2d at 434, 435. Those stated grounds for affirmance are different from the statutory grounds upon which the circuit court based its judgment. Further, neither party to this appeal has briefed such principles to this court. Accordingly, I do not think it appropriate, and for the reasons described below I do not find it necessary, for this court to explore those principles on its own in order to affirm the circuit court's judgment.
While it is true that this court "`"`will affirm the judgment appealed from if supported on any valid legal ground,'"'" Blackmon v. Brazil, 895 So.2d 900, 905 (Ala.2004) (quoting Kingvision Pay-Per-View, Ltd. v. Ayers, 886 So.2d 45, 51 (Ala. 2003), quoting in turn other cases) (emphasis on the word "legal" added in Blackmon by our Supreme Court), the analysis in which the main opinion engages contemplates the finding and consideration of facts and the weighing of facts in light of equitable and policy considerations. Such tasks are within the province of trial courts, and not this court of appeals. See generally Hinds v. Hinds, 887 So.2d 267, 272 n. 2. (Ala.Civ.App.2004).
Moreover, by deciding this case based on the analysis laid out in the main opinion, this court is deciding the case based on principles not fully addressed by either the parties or the trial court in the proceedings below and, moreover, not briefed to this court. I believe this court attempts on its own to identify what would be the appropriate equitable and policy concerns to apply in a case such as this at the peril of misidentifying those concerns or overlooking additional or countervailing equitable or policy concerns that might be applicable (e.g., perhaps deference should be given to a next of kin requesting an autopsy under circumstances suggesting that misconduct may have led to the decedent's death) because we do not have the benefit of the parties having fully addressed these matters through the adversarial process. I do not believe this court should move to *437 fill an apparent void in the law (particularly when, for the reasons described below, it is not necessary for us to do so in order to decide the case before us) when the parties have not addressed the issue in the manner contemplated by the main opinion.
Nonetheless, I do agree that the circuit court's judgment should be affirmed in this case. I agree with that result because the daughter, who is the appellant in this case, has given us no basis for reversing that judgment.
Before the circuit court, the daughter took the singular position that the circuit court simply did not have jurisdiction. The circuit court disagreed with the daughter, and it ultimately entered a final judgment favoring the son based on §§ 34-13-11 and -12.
The daughter's only argument in her brief to this court on appeal is that "she has equal rights as a next of kin to determine the disposition of her mother's body." She cites no authority for this proposition. It is not this appellate court's role to do legal research or create an argument for an appellant. McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992).
Even if the daughter had cited authority for her position that she has a coequal right with that of her brother to decide the disposition of her mother's remains, that position cannot be accepted by this court as a ground for reversing the circuit court's judgment. The daughter's position essentially is that neither party should be favored. The nature of the dispute in this case, however, is such that leaving the dispute in a permanent impasse is not an alternative for this court, just as it was not an alternative for the trial court. Thus, if the daughter is to succeed in this appeal, she must provide this court with some reason for which she ultimately should prevail over the son. That is, it is incumbent upon the daughter to present to this court an argument as to what legal standard or legal principles should have been applied by the circuit court that would have resulted in a judgment in her favor. She has not done that. It is on that ground alone that I believe this court should not reverse the judgment of the circuit court. See, e.g., Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala.1992) (this court will not reverse a trial court's judgment on an argument not presented to the trial court); and McLemore v. Fleming, 604 So.2d at 353 (it is not the appellate court's role to do legal research or create an argument for an appellant).
BRYAN, J., concurs.
NOTES
[1] Although a number of states statutorily authorize "only one of the next of kin" to permit an autopsy, at common law "the next of kin" have the right to grant or deny authority for a private autopsy. 22A Am.Jur.2d Dead Bodies § 43 (2003). Under that principle, in order for such an autopsy to occur in this case, it would appear that both the son and the daughter would have to agree to such a procedure.